UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

ROBERT W. LOWE, II,                    )
                                       )
            Plaintiff,                 )
                                       )        No. 1:06-CV-076
v.                                     )
                                       )        Chief Judge Curtis L. Collier
JIMMY CLIFT, WILLIAM JOHNSON,          )
HAMILTON COUNTY, TENNESSEE,            )
MARY SULLIVAN MOORE, and               )
SHERIFF JOHN CUPP,                     )
                                       )
            Defendants.                )

## <u>M E M O R A N D U M</u>

Pending before the Court are several dispositive motions. Defendants Jimmy Clift ("Clift") and William Johnson ("Johnson") have filed two motions for summary judgment, the first citing a qualified immunity defense and the second challenging the merits of plaintiff Robert Lowe II's ("Plaintiff") complaint (Doc. Nos. 24 & 46). Defendant Mary Sullivan Moore ("Moore") filed a motion to dismiss the two remaining claims against her (Doc. No. 34); a prior motion to dismiss was granted in part in October 2006 (Doc. No. 22). Defendant John Cupp ("Cupp"), Sheriff of Hamilton County, has filed a motion to dismiss asserting that the complaint against him is redundant of the complaint against defendant Hamilton County (Doc. No. 43). For its part, Hamilton County (the "County") has filed a motion for summary judgment (Doc. No. 44). All of these motions are ripe for review. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. After briefly restating the facts, this Court will address each motion in turn.

## I.    FACTS

The following facts are taken primarily from Plaintiff's affidavit (Doc. No. 51-2) in response to Clift and Johnson's second summary judgment motion (Doc. No. 46). None of the defendants has filed affidavits or other exhibits in support of their motions.

Plaintiff is employed by the Tennessee Department of Children's Services ("DCS") (Doc. No. 51-2, p. 1). On March 16, 2005, Plaintiff, his wife, and two other DCS employees went to Rossville News, an adult bookstore in Chattanooga, allegedly during their lunch break (*id*. at 1, 8). Clift, an officer with the Hamilton County Sheriff's Department ("Sheriff's Department"), entered the store at about the same time as part of an unrelated investigation (Doc. No. 1, ¶ III). Clift recognized Plaintiff from prior matters involving DCS. Clift called Moore, then an Assistant District Attorney General, and informed her that Plaintiff was in the bookstore (*id*.). Moore told Clift to make contact with Plaintiff. As Plaintiff and his co-workers left the store, Clift said hello and Plaintiff nodded in response (*id*.). After this interaction, Clift prepared a formal police report noting Plaintiff's presence at Rossville News and assigning it a complaint number (Doc. No. 51-2, p. 6). The report indicates a copy would be forwarded to Plaintiff's supervisor. Clift faxed the report to Moore. After receiving it, Moore paged Plaintiff's supervisor at DCS and informed her Plaintiff had been seen at an adult bookstore "during an investigation" (*id*. at 2). Moore then faxed the report to Plaintiff's supervisor. The next day, Plaintiff was written up and restricted to his office.[1]

---

[1] Eventually, an administrative hearing was held about the incident and DCS's response, and Plaintiff was apparently cleared of wrongdoing and reinstated (Doc. No. 51-2, p. 3; No. 51-3, p. 2) (Plaintiff testifies he appealed the disciplinary action brought against him, and was "exonerated" by a full hearing).

Subsequently, Plaintiff filed a formal complaint with the Sheriff's Department regarding the actions of Clift and Moore (*id*. at 2-3). The Sheriff's Department's written response to Plaintiff's complaint was written by Johnson and adopted by Cupp. The response stated that every action taken by the Sheriff's Department was correct and it was "improper" for Lowe to have been present at Rossville News (*id*. at 7). According to Plaintiff, he had not formerly been cited for impropriety in his job performance; further, there is no DCS policy against employees visiting adult bookstores (*id*. at 3).

In the affidavit supporting his response to Clift and Johnson's second motion for summary judgment, Plaintiff alleges impropriety on the part of Clift and the Sheriff's Department, in that Clift obtained the adult bookstore's surveillance tape (showing Plaintiff and his companions entering/ exiting the store), and gave a copy of this tape to Plaintiff's supervisor,[2] Jean Mitchell ("Mitchell"), to "use as evidence" (*id*. at 2).

From these facts, Plaintiff asserts causes of action for the violation of his rights under the First, Fourth, Fifth, Ninth, and Fourteenth Amendments to the U.S. Constitution, cognizable under 42 U.S.C. §§ 1983 and 1985, and for negligence *per se*, libel, intrusion upon seclusion, public disclosure of a private fact, and false light invasion of privacy.

## II.      CLIFT AND JOHNSON'S MOTIONS FOR SUMMARY JUDGMENT

### A.      STANDARD OF REVIEW

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories,

---

[2] There is some confusion in the record, but it appears Jean Mitchell is Plaintiff's direct DCS supervisor, and Jackie Jolley is Plaintiff's district supervisor (Doc. No. 51-2, p. 2, 6, 8).

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the burden rests on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The moving party must demonstrate the absence of a genuine issue of material fact, but the non-movant is not entitled to a trial solely on the basis of its allegations. The non-movant must submit significant probative evidence to support its claim, and from which a jury could find for the non-movant. *Celotex*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party is entitled to summary judgment if the non-movant fails to make a satisfactory showing on an essential element of its case for which it bears the burden of proof. *Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 252; *Lansing Dairy v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### B. QUALIFIED IMMUNITY

Clift and Johnson have been sued in their individual and in their official capacities. In their individual capacities, these defendants deny liability due to their qualified immunity as police officers. Qualified immunity is an affirmative defense which shields governmental officials acting within the scope of their official duties from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Barnes v. Wright*, 449 F.3d 709, 715 (6th

Cir. 2006).[3]  The threshold question for determining whether qualified immunity applies is whether Plaintiff has asserted and shown Clift and Johnson violated his constitutional rights.  *E.g.*, *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Barnes*, 449 F.3d at 714-15.  If the Court finds the defendants violated a constitutional right, the Court inquires (1) whether this right was clearly established such that a reasonable officer would have known his behavior would violate it, and (2) if so, whether Plaintiff has shown that Clift and Johnson acted in an objectively unreasonable manner in violating the right.  *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right"); *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc).  To determine if a right is clearly established, the Court first looks to Supreme Court cases, then Sixth Circuit cases, and then cases in other circuits.  *Siggers-El v. Barlow*, 412 F.3d 693, 703 (6th Cir. 2005); *Buckner v. Kilgore*, 36 F.3d 536, 539 (6th Cir. 1994).

It is Plaintiff's burden to establish Clift and Johnson are not entitled to qualified immunity. *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006); *Barrett v. Steubenville City Sch.*, 388 F.3d 967, 970 (6th Cir. 2004).  If Plaintiff can show his clearly established constitutional right was violated, it is Clift and Johnson's burden to demonstrate their acts were objectively reasonable under the law at the time.  *Tucker v. City of Richmond*, 388 F.3d 216, 220 (6th Cir. 2004).[4]  Plaintiff

---

[3] "The central purpose of affording public officials qualified immunity from suit is to protect them from undue interference with their duties and from potentially disabling threats of liability." *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996).  Qualified immunity is a powerful protection.  According to the United States Supreme Court, immunity is denied only to "the clearly incompetent and those who willingly violate the law."  *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

[4] The complaint alleges constitutional violations cognizable under 42 U.S.C. §§ 1983 & 1985 (Doc. No. 1, ¶ VIII).  To assert a *prima facie* case under § 1983, Plaintiff must demonstrate (1) the defendants acted under color of state law and (2) the defendants' conduct deprived Plaintiff of rights

5

argues that a defendant's qualified immunity is a question of fact for the jury (Doc. No. 31, p. 2), but actually, application of the qualified immunity doctrine is a question of law. *Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir. 2003); *McCloud v. Testa*, 97 F.3d 1536, 1541 (6th Cir. 1996).

## 1. Constitutional Violations – First Amendment

Neither party filed affidavits or other evidence with their briefs; therefore, the facts are taken as asserted in the complaint. Plaintiff alleges Clift saw Plaintiff at an adult bookstore and recognized him, phoned Moore to tell her Plaintiff was present, contacted Plaintiff at Moore's direction, filed a formal police report about the occurrence which he faxed to Moore,[5] and allegedly conspired with Plaintiff's supervisor to write him up and restrict him to his office without pay (Doc. No. 1, ¶¶ IV-VI). Plaintiff alleges Johnson, in his role as an internal affairs investigator, reviewed Plaintiff's complaint against Clift and "equated visiting an [a]dult bookstore with being a budding pedophile" (*id.* ¶ V). Johnson, too, allegedly conspired to negatively impact Plaintiff's employment (*id.* ¶ VI).

Again, the threshold issue in the qualified immunity analysis is whether Plaintiff has shown

---

secured by the Constitution. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). Because both Clift and Johnson were acting in their official capacities as Sheriff's Department officers, the first element, state action, is clearly established. Thus, as with Clift and Johnson's qualified immunity defense, the primary issue is whether Plaintiff can show the actual deprivation of a protected right.

[5] There is some debate over whether Clift knew the police report would be faxed to Plaintiff's supervisor. Clift avers he was told by Moore to file a police report, and he merely followed orders – he had nothing to do with and no knowledge of the report's future purpose, use, and promulgation (Doc. No. 25, p. 2) ("At Ms. Moore's direction, and not of his own accord, Det. Clift made a formal police report which he faxed to her. Ms. Moore then provided the information to Lowe's supervisor. Det. Clift was not consulted regarding this decision or any further action involving the Plaintiff."). In a subsequent filing, Plaintiff submitted Clift's police report (Doc. No. 51-2, p. 6). The report indicates a copy would be forwarded to Plaintiff's supervisor. However, as the Court finds Clift did not violate the U.S. Constitution in preparing the report, it is immaterial whether he knew Plaintiff's supervisor would receive a copy. Further, the existence of some factual dispute between the parties will not necessarily defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Clift and Johnson violated his constitutionally protected rights. But Plaintiff cannot demonstrate any constitutional right which was allegedly violated. As to the First Amendment claim Plaintiff appears to allege Clift and Johnson retaliated against him or conspired against him because he engaged in a protected activity.[6] This Court does not believe presence in an adult bookstore is protected speech. In fact, the Supreme Court has held the reverse. In *Paris Adult Theatre I v. Slaton*, 413 U.S. 49 (1973), the Court refused to find that a "zone of privacy" follows "a consumer of obscene materials wherever he goes." *Id*. at 66. The Court noted, "on numerous occasions," it had "refused to hold that commercial ventures such as a motion-picture house are 'private' for the purpose of civil rights litigation." *Id*. at 65. Finally, the Court concluded the "idea of a privacy right and a place of public accommodation are, in this context, mutually exclusive." *Id*. at 66; *see also Ellwest Stereo Theater, Inc. v. Boner*, 718 F. Supp. 1553, 1561-62 (M.D. Tenn. 1989) (adult-oriented establishments may be classified differently from other businesses even if the First Amendment is arguable abridged; courts recognize dangerous "secondary effects" may accompany such establishments) (citing, *e.g.*, *Arcara v. Cloud Books, Inc.*, 478 U.S. 697 (1986); *Renton v. Playtime Theatres*, 475 U.S. 41, (1986); *Young v. Am. Mini Theatres*, 427 U.S. 50 (1976); *SDJ, Inc. v. City of Houston*, 837 F.2d 1268 (5th Cir. 1988); *Broadway Books, Inc. v. Roberts*, 642 F. Supp. 486 (E.D. Tenn. 1986)).

Moreover, Plaintiff cannot show these defendants took "adverse action" against him – the only examples of adverse action in this case are the write-up and office restrictions against Plaintiff,

---

[6] To prove a retaliation claim, Plaintiff would need to demonstrate: (1) he was engaged in a protected activity, (2) the defendants' "adverse action" caused him to suffer an injury which would likely chill a person of ordinary firmness from continuing to engage in the activity, and (3) the defendants' adverse action was motivated at least in part by Plaintiff's exercise of his constitutional rights. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc); *Bloch*, 156 F.3d at 678.

which were measures taken by Plaintiff's supervisor at DCS and not by Clift or Johnson.[7]  Clift's only "offense" was to observe Plaintiff and prepare a police report.  It is part of Clift's duty as an officer of the Sheriff's Department to observe his surroundings and those around him.  Documenting his observances is part of this duty.  It was Johnson's duty as an internal affairs officer to investigate Plaintiff's complaint and evaluate whether Clift violated Department policies (Doc. No. 36, p. 2-3).  Johnson's actions were clearly within the scope of his authority and not an "adverse action" against Plaintiff.

Further, Plaintiff fails to satisfy the second element of a retaliation claim because neither defendant's conduct is capable of deterring a person of ordinary firmness from continuing to engage in protected conduct.  As stated above, Plaintiff's conduct in being in an adult bookstore was not protected.  Moreover, patrons of a venue into which the public is invited do not have a reasonable expectation of privacy – they necessarily encounter others who observe their presence and behavior.  *See Maryland v. Macon*, 472 U.S. 463, 469 (1985) (no reasonable expectation of privacy in areas of store where public was invited to enter and transact business).  Subjects of a police report might not like being reported on, but that does not equate to a constitutional violation, and does not demonstrate the "chilling" effect required for a retaliation claim.  Simply put, Plaintiff has not shown either defendant deprived him of a constitutionally protected right.[8]  Accordingly, Clift and Johnson

_____

[7] The Court's Order (Doc. No. 22) addressing Moore's first motion to dismiss found Plaintiff failed to state a similar First Amendment claim (*id*. at 8).  Judge Mattice defined "adverse action" in employment law terms, giving examples of discharge, demotion, failure to promote, refusal to hire, or non-renewal of contracts (*id*.) (citing *Thaddeus-X*, 175 F.3d at 396).  It is important to note, though Plaintiff's complaint asserts state-law causes of action for violations of his privacy rights, Plaintiff's requested relief – aside from punitive damages – is compensation for lost income and for legal expenses incurred when he appealed his employer's adverse action (Doc. No. 1, ¶ XII).

[8] Plaintiff challenges Clift's duty to be in the adult bookstore and his duty of observing and reporting on his surroundings (Doc. No. 39, p. 2) (labeling Clift's conduct "illegal surveillance").

are entitled to qualified immunity on this claim.[9]

## 2. Constitutional Violations – Fourth and Ninth Amendments

Plaintiff claims a "police report being made of his presence at an adult bookstore constitutes [illegal] domestic surveillance." (Doc. No. 39, p. 2). However, Plaintiff cites no case law and, in his response and his supplemental response to this motion for summary judgment, presents no evidence to overcome the defendants' immunity arguments. The Fourth Amendment prohibits

---

On the contrary, this Court believes Clift acted within the scope of his duties as an investigating officer of the Sheriff's Department. In *State ex rel. Thompson v. Reichman*, 188 S.W. 225 (Tenn. 1916), the Tennessee Supreme Court held a sheriff's duty is to "prevent and suppress crimes, public offenses, and breaches of the peace" and, further, "it is the duty of the sheriff and his deputies to keep their eyes open for evidence of public offenses . . . it is a distinct neglect of duty for them to ignore common knowledge of law violation or to intentionally avoid being where they have reason to believe that such offenses are being committed . . . . [I]t is incumbent on [the sheriff] to use all the means provided by law for the accomplishment of that end." *Id*. at 228-31; *see also Int'l Union v. Garner*, 601 F. Supp. 187, 191 (M.D. Tenn. 1985) (no violation of union members' privacy under Tennessee law when police, upon direction of mayor, surveilled union meetings, obtained and ran their license plates, and informed their employers of their presence at union meetings).

[9] The Court admits that there is a "Big Brother" nature to Moore's direction that Clift report on Plaintiff's activities, and the defendants' conduct in sharing the report with Plaintiff's supervisor. The Court does not condone the defendants' behavior or poor judgment, but finds it does not rise to the level of a constitutional violation. Further, whether Plaintiff recognizes it or not, his presence in an adult bookstore raises a red flag. He, too, was exercising poor judgment, since he holds an important position of public trust. In his job, Plaintiff deals with children who have been abused by their families, sometimes sexually, and who have been let down by the State. The State has a strong interest in employing at DCS individuals with high moral character who demonstrate consistent good judgment, and in maintaining a positive public image for DCS employees. Plaintiff is presumably an at-will employee; if he prefers not to abide by the implied ethics of the case manager position, he is free to leave it. As an at-will employee in a sensitive position, he is presumed to have willingly opened himself to reasonable investigation relating to sensitive matters within his employment purview. *See Hughes v. City of N. Olmsted*, 93 F.3d 238, 241-41 (6th Cir. 1996) (questions posed to officer and his wife about intimate matters reasonable in light of charges of sexual harassment against officer; constitutional right to privacy/free association not so clearly established that officials would know such questions violated law); *see also Vega- Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 180 (1st Cir. 1997) ("employees must accept some circumscription of their liberty as a condition of continued employment) (citing *INS v. Delgado*, 466 U.S. 210, 218 (1984)); 1 Wayne LaFave, Search & Seizure § 2.7(f) (skeptical about fixed police video surveillance of a person's public activities violating Fourth Amendment).

unreasonable searches and seizures.[10] U.S. Const. amend. IV. A "search" includes a governmental invasion of a person's privacy, but the person's expectation of privacy must be reasonable. *See Oliver v. United States*, 466 U.S. 170, 177-78 (1984); *Katz v. United States*, 389 U.S. 347, 361 (1967). Plaintiff was in a store, a public venue; he was present with co-workers and thus displayed neither a subjective nor objective expectation of privacy. In other words, Plaintiff was in "plain view" and Clift did not conduct a "search." *See Maryland v. Macon*, 472 U.S. 463, 471 (1985) (detective's presence in store to which the public was invited did not violate Fourth Amendment); *California v. Ciraolo*, 476 U.S. 207, 213 (1986) (Fourth Amendment does not protect from "official eyes" that which a person knowingly exposes to public view) (citing *Katz*, 389 U.S. at 351).[11] Clift and Johnson's motion will be granted as to this claim.

As for Plaintiff's Ninth Amendment claims, it is well settled that the Ninth Amendment is a rule of interpretation which does not confer substantive rights. *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991) ("[t]he Ninth Amendment was added to the Bill of Rights to ensure the maxim *expressio unius est exclusio alterius* would not be used at a later time to deny fundamental rights

---

[10] The complaint does not allege any seizure of Plaintiff's person or belongings or any application for a warrant.

[11] Plaintiff argues that the report's very existence "memorializes and perpetuates the violation. There is no value to a reports [*sic*] that state that x was seen at the Bi-Lo on Friday; here, because of the location and the person, the Defendants examined and memorialized the innocent actions of Plaintiff, and then made further illegal and improper use of it." (Doc. No. 39, p. 2). This argument points out the very reason the police report was *reasonable* – the location and the person. A police officer observing a suspected methamphetamine user in a pharmacy may report the sighting; the individual might innocently be purchasing sleep medication, but the report would be reasonable. Although the analogy is not perfect, Plaintiff's job is of a sensitive nature, because of the sensitive nature of the children with whom he works. Plaintiff is a known DCS employee, and his presence in an adult bookstore, however innocent, raised a reasonable suspicion. If Clift had observed Plaintiff at the Bi-Lo – unless he was purchasing a copious amount of pseudoephedrine – the report may be less reasonable.

merely because they were not specifically enumerated in the Constitution"); *see also Froehlich v. State of Wisc. Dep't of Corr.*, 196 F.3d 800, 801 (7th Cir. 1999); *Vega-Rodriguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 182 (1st Cir. 1997); *San Diego Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1125 (9th Cir. 1996) (collecting cases, citing Laurence H. Tribe, Constitutional Law 776 n.14 (1988) (error to assert a Ninth Amendment right "because the Ninth Amendment is *not* a source of rights as such") (original emphasis)).  Thus, Plaintiff cannot demonstrate a constitutional deprivation – he cannot overcome the assertion of qualified immunity *or* sustain a cause of action under 42 U.S.C. § 1983 – based on the Ninth Amendment.  Clift and Johnson's motion will be granted as to this claim.

### 3.  Constitutional Violations – Fifth and Fourteenth Amendments

Plaintiff also alleges Clift and Johnson violated his rights under the Fifth and Fourteenth Amendments to the U.S. Constitution.  Plaintiff does not differentiate whether his allegations are of a substantive or a procedural nature.  The Court will construe the complaint to allege (1) a procedural due process claim arising from Johnson's review of the complaint Plaintiff filed against Clift; and (2) a substantive due process claim under the Fourteenth Amendment "right to privacy."

To assert a valid procedural due process claim, Plaintiff must show he was deprived of a protected interest, and the deprivation occurred without due process of law.  *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2004).  The "fundamental" requirement of procedural due process is the "opportunity to be heard at a meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  The complaint charges that Johnson's review of Plaintiff's allegations against Clift was wrongly decided and "equated visiting an [a]dult bookstore with being a budding pedophile" (Doc. No. 1, ¶ V).  However, there is no

constitutional violation as long as "a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Plaintiff "may not seek relief under § 1983 without first pleading and proving the inadequacy of state or administrative processes and remedies to redress due process violations." *Jefferson v. Jefferson County Pub. Sch. Sys.*, 360 F.3d 583, 588 (6th Cir. 2004). Here, Plaintiff attacks Johnson's conclusion, but he does not attack the *processes* of the Department's internal affairs system.[12] Plaintiff has not alleged a procedural due process claim as he has not alleged an inadequate post-deprivation remedy, nor can he – his affidavit admits he filed a formal complaint and was timely interviewed by Johnson (Doc. No. 51-2, p. 3). Thus, Plaintiff experienced an "opportunity to be heard in a meaningful time and in a meaningful manner." Plaintiff might disagree with Johnson, but this does not mean the grievance procedure was unconstitutional. Accordingly, all defendants in this matter are entitled to summary judgment on Plaintiff's procedural due process claim.

To assert a valid substantive due process claim, Plaintiff would need to locate his complaint within the limited confines of the Fourteenth Amendment, which protects "rights fundamental or implicit in the concept of ordered liberty," *Paul v. Davis*, 424 U.S. 693, 713 (1976); *J.P. v. DeSantis*, 653 F.2d 1080, 1090 (6th Cir. 1981), including "personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education," *Lawrence v. Texas*, 539 U.S. 558, 574 (2003). This Sixth Circuit has interpreted the Supreme Court to recognize two "privacy" rights:

---

[12] Plaintiff asserts "no action or policy has been provided or set out to protect the valid privacy concerns of the public at large, and if such exists, it is officially ignored by policy and active procedure, as was exhibited in the 'investigation' of this case." (Doc. No. 1, ¶ VIII). The Court does not read this as a challenge to the investigation's procedures but as asserting the Department's "deliberate indifference" (addressed *infra*). Therefore, the Court finds Plaintiff has failed to properly allege a procedural due process claim, and in fact took advantage of the Sheriff's Department's post-deprivation remedies – at least until he disagreed with the conclusion.

(1) an autonomy-based right to privacy, and (2) a right to control the dissemination of sensitive

information about one's self.  *Flaskamp v. Dearborn Pub. Sch.*, 385 F.3d 935, 944-45 (6th Cir.

2004) (citing *Whalen v. Roe*, 429 U.S. 589, 599 (1977); *Bloch v. Ribar*, 156 F.3d 673, 683 (6th Cir.

1998)).  Plaintiff does not assert an abridgement of his right to engage in "intimate association."  *Id*.

at 945.  Though the Sixth Circuit has recognized an "informational right to privacy," *Bloch*, 156

F.3d at 683, which has been defined as the right to keep sensitive information from becoming public,

*Flaskamp*, 385 F.3d at 945, Plaintiff's presence in a public store, even a store concerned with private

matters, cannot be considered "sensitive information."  As Plaintiff argues (Doc. No. 39), if he was

in the Bi-Lo there would be no issue of a police officer preparing a police report.  The fact Plaintiff

was in a store selling "intimate" merchandise does not endow his presence with an aura of privacy.

*See Paris Adult Theatre I*, 419 U.S. at 66.[13]

To reiterate: Plaintiff has no privacy interest in his presence in an observable location with

his co-workers.  *Accord Vega-Rodriguez*, 110 F.3d at 182 ("the right to be free from disclosed video

surveillance while at work in an open, generally accessible area does not constitute a fundamental

right"); *Hughes v. City of N. Olmsted*, 93 F.3d 238, 240-42 (6th Cir. 1996) (asking the wife of officer

---

[13] A successful "informational privacy" claim must overcome two obstacles: "(1) the interest at stake must implicate either a fundamental right or one implicit in the concept of ordered liberty; and (2) the government's interest in disseminating the information must be balanced against the individual's interest in keeping the information private."  *Flaskamp v. Dearborn Pub. Sch.*, 385 F.3d at 945.  Here, Plaintiff does not assert either a "fundamental right or one implicit in the concept of ordered liberty," because he has no fundamental privacy right in his presence in a public venue. Further, the State's interest in Plaintiff's good judgment and proper behavior towards the children he deals with at DCS is very strong.  As *Hughes*, *supra*, demonstrates, Clift's drafting of a police report on Plaintiff's whereabouts does not violate a clearly established constitutional right because it is related to his job performance and fitness.  *See also Flaskamp*, 385 F.3d at 946 ("Just as we have treated the extent of dissemination as an important factor in assessing an informational-privacy claim, so also we have considered the explanation the government body has given for seeking the information in the first instance in assessing an informational-privacy claim.").

charged with sexual misconduct if their marriage was "exclusive" did not violate clearly established right because it related to assessment of job performance); *Flaskamp*, 385 F.3d at 946 (school board's interest in enforcing rule against teachers dating students justified limited inquiry about teacher's relationship with former student); *Int'l Union v. Garner*, 601 F. Supp. 187, 191 (M.D. Tenn. 1985) (union members asserted privacy infringements under Tennessee law when police, at mayor's behest, observed meeting held in public venue, recorded members' license plates, and notified employers they were union members; "if the plaintiffs truly wanted their participation in the meeting to be private, they would not have left their cars in front of the meeting hall . . . . [A] person does not have a legitimate expectation of privacy, solitude, or seclusion in being free from the dissemination of inferences drawn from observations readily perceivable in public view."). Likewise, this Court finds Plaintiff has no privacy interest in his public presence and the inferences drawn therefrom, and he has no Fourteenth Amendment claim for the dissemination of information that is neither sensitive nor private.

### 4.    42 U.S.C. § 1985

Plaintiff asserts a cause of action under 42 U.S.C. § 1985 without specifying a subsection. In fact, Plaintiff has not alleged facts which could support a cause of action under *any* of the three subsections. Section 1985 prohibits conspiracies (1) to inhibit federal officers from performing their duties; (2) to obstruct justice or intimidate actors in federal legal proceedings or to interfere with due process in state courts with the intent to deprive persons of their equal protection rights; and (3) to deprive others of their equal protection rights. *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006). Plaintiff is not a federal officer, so § 1985(1) is clearly inapplicable. Plaintiff was not a party, witness, or juror to a federal lawsuit at the time of Clift's report, so the first clause

of § 1985(2) is inapplicable. Both the second clause of § 1985(2) and § 1985(3) require Plaintiff to allege and prove there was a racial or class-based, invidious and discriminatory animus behind the conspirators' action. *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999). Plaintiff does not state his race. He alleges no other class-based animus as motivation for Clift and Johnson's acts in allegedly conspiring against him. Therefore, Plaintiff cannot state a cause of action under 42 U.S.C. § 1985, and this claim will be dismissed against all defendants.

### 5.  Unreasonable Conduct

The Court finds Plaintiff has not shown Clift and Johnson violated his constitutionally protected rights. Therefore, the Court does not reach the issue of whether a reasonable officer would understand his conduct violated Plaintiff's rights. *Saucier*, 533 U.S. at 201; *Cherrington v. Skeeter*, 344 F.3d 631, 636 (6th Cir. 2003) (courts should proceed to second step of the qualified immunity analysis only if a constitutional violation has occurred).

### C.  PLAINTIFF'S STATE LAW CLAIMS

The Court has decided that Clift and Johnson are entitled to qualified immunity on Plaintiff's claims under the First, Fourth, Fifth, Ninth, and Fourteenth Amendments to the U.S. Constitution, because Plaintiff has failed to demonstrate these defendants violated his constitutionally protected rights. After dismissing Plaintiff's constitutional claims, this Court turns to Plaintiff's state law claims. Plaintiff alleges privacy torts as well as negligence *per se* and libel (Doc. No. 1, ¶ VI).

The Court would have supplemental jurisdiction over these state law claims as they arise from the same facts as Plaintiff's § 1983 and § 1985 claims. *See* 28 U.S.C. § 1367(a). However, this Court may decline to exercise supplemental jurisdiction because the Court has dismissed

Plaintiff's federal claims, the claims over which it had original jurisdiction. 28 U.S.C. § 1367(c). The question of whether to retain jurisdiction over the state law claims rests within this Court's discretion, *Blakely v. United States*, 276 F.3d 853, 860 (6th Cir. 2002), but there is a presumption in favor of dismissing, without prejudice, Plaintiff's state law claims because of the dismissal of the federal causes of action, *id*. at 863. This is particularly true in areas of state law which are not fully settled, such as privacy torts in Tennessee. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law"); *see also* 1 Tenn. Juris., Privacy § 1. The Court finds that the issues presented are more appropriate for resolution by Tennessee state courts. The Court declines to exercise its supplemental jurisdiction. Plaintiff's state law claims will be dismissed without prejudice to refile in state court.

### D.    OFFICIAL CAPACITY CLAIMS

Clift and Johnson argue, "a suit against an individual in his official capacity is the equivalent of a suit against the governmental entity" (Doc. No. 47, p. 4)(citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994); *Will v. Mich. Dep't of State Pol.*, 491 U.S. 58, 71 (1989)). This Court treats suits against officers in their official capacities as suits against the municipality where the allegations are redundant and the municipality is a party, *e.g.*, *Ledbetter v. Knox County*, 2006 WL 354200, *3 (E.D. Tenn. Feb. 15, 2006); *Frost v. Hamilton County*, 2006 WL 228881, *6 (E.D. Tenn. Jan. 30, 2006); *see also Von Herbert v. City of St. Clair Shores*, 61 F. App'x 133, 140 (6th Cir. 2003). This is the case here. Furthermore, this Court finds no wrongdoing of constitutional magnitude on the part of Clift or Johnson. Accordingly, these defendants' motion for summary judgment will be granted and all claims against them in their official capacities will be dismissed

with prejudice.

## III. MOORE'S SECOND MOTION TO DISMISS

### A.    STANDARD OF REVIEW

When reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court construes the complaint in the plaintiff's favor and accepts as true the complaint's factual allegations. *Bloch,* 156 F.3d at 677; *Broyde v. Gotham Tower, Inc.*, 13 F.3d 994, 996 (6th Cir. 1994). The Court must determine whether the plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007) (rejecting the traditional 12(b)(6) standard of *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)). The Court's main concern is "not whether [the] plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). At the same time, however, legal conclusions are insufficient, *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988), and the complaint must contain direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory, *id*.

### B.    DISCUSSION

In her second motion to dismiss (Doc. No. 34) and its supporting memorandum, Moore argues Plaintiff (1) failed to state a claim for intrusion upon seclusion and (2) failed to state a claim for public disclosure of private facts (Doc. No. 35). These are the only claims, asserted under state law, which remain against Moore following the Court's Memorandum and Order dated October 31, 2006 (Doc. No. 22).

Moore cites *Givens v. Mullikin ex rel. Estate of McElwaney*, 75 S.W.3d 383, 412 (Tenn. 2002), for the proposition that an intrusion upon seclusion claim cannot survive if the information a defendant obtained about a plaintiff was subject to public discovery. Here, as Moore highlights, Plaintiff admits he was visiting an adult bookstore with co-workers – information discoverable by his supervisor with or without Moore's intercession (*id*. at 3). Further, because Clift's police report was filed, Plaintiff's presence was even more discoverable as a matter of public knowledge and public record (*id*. at 3-4) (citing Tenn. Code Ann. § 10-7-403). This is a much weaker argument since Moore advised Clift to draft and file the police report/public record. However, Moore wins on her main argument. As discussed above in dealing with Clift and Johnson's motion, Plaintiff's presence, without disguise, in a publicly accessible store, notably with three co-workers, was not a secret but was an act open to observation, discovery, and interpretation. *Accord Givens*, 75 S.W.3d at 412; *Int'l Union*, 601 F. Supp. at 189, 192 (plaintiffs argued they were discussing private matters in union meetings; court dismissed complaint under Fed. R. Civ. P. 12(b)(6) because "[p]articipation in a union meeting is not a matter of individual solitude or seclusion . . . . if the plaintiffs truly wanted their participation in the meeting to be private, they would not have left their cars in front of the meeting hall"; since the cars were in plain view, and since the defendants did not wiretap or eavesdrop on the meetings but simply observed the cars outside and drew inferences therefrom, there was no cause of action for intrusion upon seclusion). Accordingly, Moore's motion is granted in that Plaintiff has failed to state a claim which meets all required elements of the tort of intrusion on seclusion.[14]

---

[14] The elements of an "intrusion upon seclusion" claim were set forth in the Court's prior Memorandum and Order. They are: (1) the information sought by the defendant was not properly discoverable or was otherwise subject to some form of privilege; (2) the defendant knew that the

As for Plaintiff's assertion of the tort of public disclosure of a private fact, such a cause of action requires "the matter [to be] made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Gentry v. E.I. DuPont De Nemours and Co.*, 1987 WL 15854, *3 (Tenn. Ct. App. Aug. 18, 1987). In *Gentry*, since only a few employees heard the private information and since they were instructed not to repeat it, there was no tort. *Id*. at *4. In *Stein v. Davison Hotel Co.*, 1996 WL 230196 (Tenn. Ct. App. May 8, 1996), the court found disclosure of plaintiff's positive drug test to two persons insufficient to support a claim of public disclosure of private fact. *Id*. at *8. Again, an element of the claim is widespread dissemination, and the court found dissemination to two people was not widespread. *Id*.

Because she shared information with only one person, Moore believes Plaintiff has failed as a matter of law to allege the communication of private information to the public (Doc. No. 35, p. 4). Moore also notes that Plaintiff's presence in a public venue, a store, can hardly be deemed a "private fact" (*id*. at 5). Again, Moore's second argument is the stronger of the two. The Sixth Circuit has held, "there is no liability for giving further publicity to what the plaintiff himself leaves open to the public eye . . . Nor is his privacy invaded when the defendant gives publicity to a business or activity in which the plaintiff is engaged in dealing with the public." *Puckett v. Am. Broad. Co.*, 1990 WL 170425, *2 (6th Cir. Nov. 6, 1990) (quoting Restatement (Second) of Torts § 652D cmt. b; citing *Beard v. Akzona, Inc.*, 517 F. Supp. 128 (E.D. Tenn. 1981)). Plaintiff's first argument is weaker because, as stated above and as pointed out by Plaintiff in his response (Doc.

---

information was not discoverable or was otherwise subject to a privilege but nevertheless proceeded to obtain that information; (3) the obtaining of such information would be highly offensive to a reasonable person; and (4) injury was suffered from the invasion of privacy. (Doc. No. 22, p. 14).

No. 42) to her motion, she in fact did cause the fact of Plaintiff's presence to be widely disseminated by directing Clift to prepare a police report which then became a public document. However, since Plaintiff's presence at Rossville News cannot be classified as a "private fact," there is no tort. Moore's second motion to dismiss (Doc. No. 34) will be granted and both claims will be dismissed with prejudice.

## IV. CUPP'S MOTION TO DISMISS

Cupp's motion to dismiss (Doc. No. 43) is short and sweet:

Defendant John Cupp, former Sheriff of Hamilton County, Tennessee, moves the Court pursuant to the Fed. R. Civ. P. 12 to dismiss with prejudice any cause of action against him in his official capacity as Sheriff of Hamilton County. In support of this motion, Defendant Cupp shows that he was not sued in his individual capacity, but rather as Sheriff of Hamilton County, Tennessee. Hamilton County, Tennessee, however, is also a named party in this action.

A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity. *Matthews v. Jones*, 35 F.3d 1046, [1049] (6th Cir. 1994); *Will v. Mich[.] Dep't of State Police*, [491 U.S. 58, 68] (1989). Maintaining John Cupp in this action as a named Defendant, then, is a redundancy. His dismissal from this matter with prejudice is appropriate.

(*Id.*) Cupp correctly cites the above cases. As suits against state officers in their official capacities are treated as suits against the State, *Monell v. New York City Dep't of Social Servs*, 436 U.S. 658, 690, n.55 (1978), for the purposes of § 1983 actions – as stated above – this Court consistently treats suits against municipal officers in their official capacities as suits against the municipality where the allegations are redundant. *E.g., Ledbetter v. Knox County*, 2006 WL 354200, *3 (E.D. Tenn. Feb. 15, 2006); *Frost v. Hamilton County*, 2006 WL 228881, *6 (E.D. Tenn. Jan. 30, 2006); *see also Von Herbert v. City of St. Clair Shores*, 61 F. App'x 133, 140 (6th Cir. 2003). Here, Plaintiff's § 1983 claim against Cupp and the County is contained in the same paragraph of the complaint and alleges

the same failure to properly train and supervise Department officers and develop a privacy policy (Doc. No. 1, ¶ VIII). Accordingly, the Court finds the suit against Cupp is redundant of the suit against the County. Cupp's motion will be granted and all claims against him in his official capacity will be dismissed with prejudice.[15]


## V. THE COUNTY'S MOTION FOR SUMMARY JUDGMENT

As the Court has granted the first motion for summary judgment filed by defendants Clift and Johnson, the second motion to dismiss filed by defendant Moore, and the motion to dismiss filed by defendant Cupp, Plaintiff's only remaining claims are against the County.

There is no vicarious or *respondent superior* liability for a municipality/county under § 1983. *Gregory v. Shelby County*, 220 F.3d 433, 441 (6th Cir.2000) (citing *Monell,* 436 U.S. at 694); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988) (decisions by subordinate employees did not necessarily reflect official policy). To establish the County's § 1983 liability, Plaintiff must show he was injured by execution of the County's official policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005). The Court must decide whether Plaintiff has asserted the deprivation of a constitutional right; if so the Court decides whether the County is responsible for such deprivation. *Cash v. Hamilton County Dep't of Adult Prob.*, 388 F.3d 539, 542 (6th Cir. 2004) (citing *Doe v. Claiborne County*, 103 F.3d 495, 505-07 (6th Cir.1996)). "Where no constitutional violation by the

---

[15] *See also Greene v. Barber*, 310 F.3d 889, 898 (6th Cir. 2002) (plaintiff argued police chief was liable for constitutional infractions committed by officers he supervised; court noted police chief "must have played an active role in the alleged violations" and his mere failure to act could not impose supervisory liability) (citing *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir.1999); *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir.1989)). Here, the allegations against Cupp are for his supervisory liability and failure to train (Doc. No. 1, ¶ VIII); there is no evidence he took an "active role" in any alleged constitutional violation.

individual defendants is established, the municipal defendants cannot be held liable under § 1983." *Bukowski v. City of Toledo*, 326 F.3d 702, 712-13 (6th Cir. 2003) (citing *Scott v. Clay County*, 205 F.3d 867, 879 (6th Cir. 2000) (the "conclusion that no officer-defendant had deprived the plaintiff of any constitutional right *a fortiori* defeats the claim against the County as well"); *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001)). Here, the Court has dismissed Plaintiff's claims against the individual defendants for failure to state a claim and because Plaintiff cannot demonstrate he had a reasonable expectation of privacy offended by the defendants' acts (*see* Parts II–III, *supra*). Therefore, Plaintiff cannot establish the County's liability under § 1983. The County's motion for summary judgment (Doc. No. 44) will be granted and all claims against the County will be dismissed with prejudice.

Briefly, the Court notes, to establish the County's liability if in fact this Court had found a constitutional deprivation, Plaintiff would need to prove the County's deliberate indifference to his constitutional rights. *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999); *Gazette v. City of Pontiac*, 41 F.3d 1061, 1066 (6th Cir. 1994). In *Brown*, the Sixth Circuit described "two types of situations that would justify a conclusion of deliberate indifference in the failure to train police officers": (1) failure to provide adequate training in light of foreseeable consequences that could result from a lack of instruction; and (2) failure to act in response to repeated complaints of constitutional violations by city officers. *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). In his complaint, Plaintiff alleges that both the County and Sheriff's Department failed (1) to properly train and/or supervise its officers; (2) to adopt a policy to protect valid privacy concerns; and (3) to implement/practice its privacy protection policy in the event such policy existed (Doc. No. 1, ¶ VIII; Doc No. 44, p. 3). However, assuming and in spite of discovery in this matter, Plaintiff

has failed to submit any evidence to support the allegations of inadequate training or the absence of a policy. Plaintiff relies simply on Clift and Johnson's allegedly deficient conduct. There is no evidence to demonstrate foreseeability or that the County was on notice of similar privacy deprivations because of repeated complaints. Plaintiff's reliance on bare allegations is not sufficient to create an issue of material fact or otherwise defeat a summary judgment motion. Plaintiff cannot prove the existence or lack thereof of a policy without evidence of the policy, or the existence of a custom without evidence of more than one incident. "*Doe* makes clear that the plaintiff bears a heavy burden in proving municipal liability, and he cannot rely solely on a single instance to infer a policy of deliberate indifference." *Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005) (citing *Doe*, 103 F.3d at 507). In *Thomas*, the plaintiffs alleged the police department had a custom of mishandling excessive force complaints; the court required the plaintiffs to offer evidence "reach[ing] beyond the facts of this case to show the possibility of a pattern." *Id*. at 434. The plaintiffs' failure to do so meant they did not meet their burden of showing a genuine issue of material fact to survive summary judgment. *Id. See also Blackmore v. Kalamazoo County*, 390 F.3d 890, 900 (6th Cir. 2004).


## V. CONCLUSION

For the foregoing reasons, the Court will grant Clift and Johnson's first summary judgment motion (Doc. No. 24). The Court will grant their second summary judgment motion in part (Doc. No. 46), to the extent it asserts the claims against the defendants in their official capacities must be dismissed. The Court does not reach the remainder of the second motion because all claims against these defendants are now resolved: qualified immunity protects them from liability in their

individual capacities, and the claims against them in their official capacities are dismissed as redundant of the claims against the County.  The Court will grant Moore's second motion to dismiss (Doc. No. 34), which resolves the two remaining claims against her.  The Court will grant Cupp's motion to dismiss the claims against him in his official capacity (Doc. No. 43).  Finally, the Court will grant the County's summary judgment motion (Doc. No. 44).  All claims against Cupp and the County will be dismissed.  All claims will be dismissed with prejudice in federal court, except for Plaintiff's state law claims against Clift and Johnson.  These claims are dismissed without prejudice, because the Court declined to exercise its supplemental jurisdiction and declined to resolve these claims on their merits.

An order will enter dismissing Plaintiff's suit.

**/s/**‎_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**